**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

_____  )
                                 )
UNITED STATES OF AMERICA         )
*ex rel*. NORMAN RILLE AND NEAL  )
ROBERTS,                         )
                                 )        Civil Action 4:04CV00989-BRW
            PLAINTIFFS,          )
                                 )
        v.                       )
                                 )
HEWLETT PACKARD COMPANY          )
                                 )
            DEFENDANT.           )
_____  )

## ORDER

Pending is a Motion for Award of Statutory Attorneys' Fees, Costs, and Expenses

Pursuant to 31 U.S.C. § 3730(d) by Norman Rille and Neal Roberts ("Relators") (Doc. No. 146).

Defendant Hewlett-Packard ("HP") has responded.[1]  Relator's Motion is GRANTED to the

extent set out below.

## I.    BACKGROUND

Based on a Stipulation of Dismissal filed by the Government and HP, this case was

dismissed on August 31, 2010.[2]  Relators then filed their Motion for Attorneys' Fees.[3] Relators

---

[1]Doc. No. 198.

[2]Doc. Nos. 95, 96.

[3]Doc. No. 146. The Motion for Attorneys' fees was filed on April 15, 2011. An October
7, 2010 Order granted Relators an extension of time to file a motion for attorneys' fees until 30
days after the Court issued its last ruling on multiple motions relating to Relators' share of the

1

lead counsel were lawyers with the firm of Packard, Packard & Johnson[4] ("PPJ") in Salt Lake

City, Utah, and Los Altos, California, as well as two local lawyers: Steve Engstrom and Shirley

Jones of Wilson, Engstrom, Corum & Coulter.  To understand Relators' Motion and HP's

response, a little background is necessary.

In 2004, Relators filed not only this case, but also other complaints alleging violations of

the False Claims Act ("FCA").  Each case alleged similar behavior -- defective pricing,

kickbacks, or other violations carried out through strategic alliances. The cases grouped

defendants together based on the alleged alliances.[5]

---

settlement between HP and the Government. Doc. No. 117.

[4]The law firm of Packard, Packard & Johnson and each of the attorneys of that firm were relieved as counsel on July 16, 2011.  Doc. No. 193.  According to an August 30, 2011, letter from Relators' current counsel, Mr. Stanley Gibson, Relators and PPJ are involved in a law suit in over fees that is now pending in Los Angeles County Superior Court.

[5]For example: *U.S. ex rel Rille v. Booz Allen Hamilton*, *et al*., No. 4:04-CV-00984-BRW. Filed September 17, 2004, against Defendants Booz Allen Hamilton Inc. and Axciom Corporation. An Amended Complaint on September 20, 2005, added The Titan Corporation as a Defendant. A Fourth Amended Complaint filed on December 1, 2006, added EMC Corporation as a Defendant. An April 12, 2007 Stipulation of Dismissal dismissed Booz Allen Hamilton Inc. and The Titan Corporation, and Axciom Corporation was dismissed by stipulation on April 24, 2007. Only EMC Corporation remained as a Defendant when the case was transferred to the United States District Court for the Eastern District of Virginia. Doc. No. 143.
*United States ex rel Rille v. Accenture LLP, et al*., No. 4:04-CV-00985-BRW. The Defendants in this case included: Accenture LLP; Accenture Ltd; Proquire; Seebeyond Technology (terminated as Defendant on August 13, 2007); International Business Machines, Inc. (terminated as Defendant on August 15, 2007); and Sealed Defendant 1 (severed on October 9, 2007). Accenture LLP, Accenture Ltd, and Proquire LLC were the remaining Defendants when the parties' September 9, 2011 Status Report informed the Court that this matter has been resolved.
*United States ex rel Rille v. Electronic Data Systems Corporation et al*., No. 4:04-CV-00986-BRW. Relators' September 17, 2004 Complaint names Electronic Data Systems Corporation, Sun Microsystems, Inc, and Dell Inc as Defendants. Electronic Data Systems Corporation and Dell were terminated as Defendants on August 13, 2007. Sun Microsystems, Inc. and the Government settled, and this case was dismissed with prejudice on February 8, 2011. Doc. No. 244.

Relators' Motion asks for fees, costs, and expenses under 31 U.S.C. § 3730(d) in the amount of $2,430,983 for time expended and $269,424 for costs.[6] The fees are divided into two categories: general fees and HP-specific fees. General fees include charges for work that was not exclusive to HP. The history of Relators' cases goes back as far as 2002.[7] At that time, Relators began meeting with PPJ attorneys about possible FCA violations. PPJ independently

---

*United States ex rel Rille v. _____*, No. 4:04-CV-00987. This case remains under seal.

*United States ex rel Rille v. PricewaterhouseCoopers LLP, et al*., No. 4:04-CV-00988-BRW. The Defendants in this case included: Lockheed Martin Corporation (terminated April 19, 2007); Raytheon Company (terminated April 19, 2007); Exostar, LLC (terminated April 19, 2007); Exostar Corporation (terminated April 19, 2007); Pricewaterhouse Coopers LLP (terminated August 15, 2007); PWC Consulting LLC (terminated August 15, 2007); International Business Machines, Inc. (terminated August 15, 2007); IBM Global Services Company (terminated August 5, 2007); Oracle Corporation (terminated August 13, 2007); Boeing Company (terminated April 17, 2007); and Cisco Systems, Inc. The case against Cisco Systems, Inc. settled and was dismissed with prejudice on September 28, 2010. Doc. No. 143.

*United States ex rel Rille v. Accenture, et al*., No. 4:04-CV-00989-BRW. Relators' September 17, 2004 Complaint names as Defendants: Accenture LLP; Accenture Ltd; Avanade, Inc.; Hewlett-Packard Company; and Microsoft Corporation. The Government filed its Complaint in Intervention on April 12, 2007. Defendants Avande, Inc. and Microsoft Corporation were dismissed without prejudice on April 17, 2007. On October 4, 2007, Defendants Accenture LLP and Accenture Ltd. were severed from this case, and transferred to and consolidated with *United States ex rel Rille v. Accenture LLP, et al*., No. 4:04-CV-00985-BRW. The Government and HP settled this case, and the case was dismissed. Doc. Nos. 95, 96.

*United States ex rel Rille v. Accenture, et al*., No. 4:04-CV-00990-BRW. In this case, Relators sued American Management Systems, Inc., CACI International, Inc., and Sealed Defendant 1. Both American Management Systems, Inc. and CACI International, Inc. were dismissed on April 24, 2007. Doc. Nos. 52, 56. The case is still pending against sealed Defendant 1.

*United States ex rel Rille v. Science Applications International Corporation, et al*., No. 4:04-CV-00991-BRW. Defendant Science Applications International Corporation was terminated on April 17, 2007, pursuant to a Stipulation of Dismissal. About one year later, Relators filed another Stipulation of Dismissal in connection with the remaining Defendants in this case -- SAP America Inc and SAP Systems Integration America, LLC. Doc. No. 64. This was dismissed in its entirety. Doc. No. 65.

[6]Doc. No. 146.

[7]Doc. No. 147.

investigated the allegations to determine if there were facts supporting a FCA case.[8]  By

December 2003, PPJ decided that there was merit to the FCA lawsuits.  Relators and PPJ

executed engagement letters or Authorization and Fee Agreements sometime in early 2004.[9]

Most of Relators' cases were filed in September 2004.  Even after the cases were filed, PPJ

continued billing general fees, all the way into 2011.[10]

    HP asserts that certain fees and costs Relators seek are improper.  Relators maintain that

PPJ is entitled to the full amount of fees and costs requested.

## II.     DISCUSSION

    Under 31 U.S.C. § 3730(d), when the Government intervenes and there is a settlement or

award against a defendant, the relator will "receive an amount for reasonable expenses which the

court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.  All such

expenses, fees, and costs shall be awarded against the defendant."[11]  The method for determining

attorneys' fees is well established.  The starting point is to determine the "lodestar," or the initial

estimate of the amount to award.[12]  To calculate the lodestar, the court must multiply a

reasonable number of hours expended by a reasonable hourly rate as to each lawyer who worked

---

[8]*Id.*

[9]Doc. Nos. 147, 148-1.

[10]Doc. No. 148, Ex. A-4.

[11]31 U.S.C. § 3730(d).

[12]See *Blum v. Stevenson*, 465 U.S. 886, 888 (1984).

on the case.[13]  The lodestar method "yields a fee that is presumptively sufficient . . . ."[14]  The

lodestar amount should then be adjusted "on the basis of the results obtained."[15]  An

enhancement of the lodestar amount is rare.[16]

### A.      Reasonable Number of Hours

#### 1.      General Time

PPJ claims 10,856 hours of billable "general time."  PPJ reached that number by

subtracting the recoveries from four defendants[17] (not parties in this case) that settled from the

total amount billed for general time.  Relators then divided the remaining general time between

three other defendants with which the Government settled, but where the parties did not agree on

fees and costs -- HP included.[18]  For example, in Case No. 4:04-CV-00988-BRW, International

Business Machines ("IBM") settled with the Government in July 2007.[19]  The negotiated

statutory fees and costs as to IBM were $365,000.[20]  PPJ applied that amount first to

IBM-exclusive costs and time.  Then Relators applied 5.5% of the $365,000 toward general

_____

[13]See *Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

[14]*Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010).

[15]*Wheeler*, 348 F.3d at 754.

[16]See *Perdue*, 130 S. Ct. at 1673-74.

[17]PWC, CSC, IBM, and EMC.

[18]Cisco, Sun, and HP.

[19]Doc. No. 148, Ex. A-1.

[20]*Id.*

costs.  Lastly, the Relators applied the remainder -- $154,452 -- toward general time.[21]  After

deducting the negotiated statutory fees for settling defendants IBM, Pricewaterhouse Cooper,

CSC, and EMC, the unpaid balance of general time is over $4 million.  PPJ contends that HP is

responsible for 1/3 of that amount, or $1,431,813.00.[22]

The highest negotiated statutory fees and costs of any of the settling defendants was $1.5

million dollars in *United States ex rel. Rille v. EMC*,[23] which settled in May, 2010.  PPJ first

applied $70,399 to cover EMC-exclusive costs, then applied the remaining $1,429,601 to EMC-

exclusive time.  None of the $1.5 million went to reduce the amount of general time, because

EMC-exclusive time exhausted the remaining $1,429,601.  PPJ accepted negotiated fees and

costs that did not reduce general costs or general time, and PPJ did not reduce the balance of

general time by any amount apportioned to EMC.

Relators' proposed division of general time does not take into account pending cases.[24]  I

am unclear how Relators plan to apportion general time to any defendants that settle in the future

if HP and others pay the entire $4 million-plus in billed general time.

Relators cite no case in which a court adopted their specific proposed method of dividing

general time.  The Eighth Circuit, however, has recognized the apportionment of attorneys' fees

---

[21]*Id.*

[22]*Id.*

[23]No. 4:04-CV-00984-BRW.

[24]At the time the Motion was filed, no settlement had been reached in either No. 4:04-
CV-00985-BRW or  No. 4:04-CV-00990-BRW.  In No. 4:04-CV-00985-BRW, the parties'
September 9, 2011 Status Report informed the Court that this matter has been resolved.

between defendants in separate, but closely-related cases.[25]  There were about 30 defendants in

the eight cases filed by Relators.  The cases were consolidated for case management purposes.

The joint motion to consolidate filed by Relators and the Government reads, in part:

> The eight (8) cases at bench involve common questions of law under the Federal
> False Claims Act and pertinent regulations.  There are also common issues of fact
> involving similar patterns and practices, and interrelated parties.  More specifically,
> all cases allege that defendant systems integrators and defendant vendors engaged
> in False Claims Act violations, along with predicate illegal kickbacks, organizational
> conflicts of interests and false certifications.[26]

The Motion to consolidate was granted on April 19, 2007.[27]

PPJ argues that, because all the cases were based on the same set of core facts and the

same general allegations, the same amount of work would have been required for one defendant

as for all.  In other words, PPJ maintains that the full amount of general time billed could be

attributed to one defendant as easily as to all defendants.  I have some doubt about this argument.

But accepting that argument as true, then it seems it also would be true that the same amount of

work would have been required for one or all cases filed by Relators.[28]  It seems fair, then, to

divide the total amount of hours spent on general time by the number of cases filed.  The number

of general hours for which HP will be responsible will be calculated based on 1/8 of general

---

[25]*Pinkham v. Camex*, 84 F.3d 292, 294 (8th Cir. 1996) (citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3rd Cir. 1993) (if fees incurred in other litigation were for work product actually utilized, time spent in other litigation was "inextricably linked" to issues in present litigation, and plaintiff was not previously compensated, the court may include all fees)).

[26]No. 4:04-CV-00989. Filed under seal on Feb. 12, 2007.

[27]No. 4:04-CV-00989, Doc. No. 47.

[28]I note that the 700,000 pages of documents provided by Relators at the onset of these cases were relevant to each of the cases, and had to be analyzed as to each defendant.

hours billed multiplied by a reasonable rate.[29]   This approach apportions fees between the cases

in which Relators were successful, as well as preventing recovery where Relators were not.

| Name | General Hours Billed | Adjusted General Hours (1/8th of Billed) |
|---|---|---|
| **Partners** | | |
| Craig Johnson | 1155 | 145 |
| Lon Packard | 276 | 35 |
| Ronald Packard | 806 | 101 |
| Von Packard | 1818 | 228 |
| Dan Packard | -- | -- |
| **Associates** | | |
| Jacquetta Bardacos | 1450 | 182 |
| Philip Favro | 1056 | 132 |
| Christopher Fernandez | 52 | 7 |
| Dan Fruchter | 492 | 62 |
| Gregory Hoole | -- | -- |
| Tessa Meyer-Santiago | 208 | 26 |
| Allison Packard | -- | -- |
| **Support Staff** | | |
| Scott Atkinson | 236 | 30 |
| Christopher Fernandez | 56 | 7 |
| Dan Fruchter | 150 | 19 |
| Cynthia Kelb | 147 | 19 |

---

[29]While other Defendants in this case were dismissed or transferred, the claims arose out of the same basic facts and theories.  Under these circumstances, the general rule that defendants are jointly and severally liable with other defendants in the same case for fees should apply.  See *Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999).

| | | |
|---|---|---|
| Sharon Western | 612 | 77 |
| **IT Staff** | | |
| Kenneth Barry | 5 | 1 |
| Ron Packard Jr. | 1573 | 197 |
| **Wilson Engstrom Corum & Coulter** | | |
| Steve Engstrom | 175 | 22 |
| Shirley Jones | 139 | 18 |
| Law Clerk | 7 | 1 |
| Paralegal | 15 | 2 |
| **Beck DeCorso** | 429 | 54 |
| | **Total** | 1,365 |

## 2.    HP-Exclusive Time

After a review of HP-Exclusive time, I see three categories of problems with the amounts

billed: (a) PPJ billed an excessive amount related to its efforts to collect attorneys' fees; (b) PPJ

billed for hours spent on Relators' conflict with the Government over Relators' share of the HP

settlement; and © certain entries are vague or otherwise inappropriate.  Courts cannot award

attorneys' fees for hours that are "excessive, redundant, or otherwise unnecessary hours."[30]  In

adjusting the amount of requested fees, a court may reduce the fees without providing a line-by-

line accounting or reduce an award by specific amounts in response to specific objections.[31]

---

[30]*El-Tabech v. Clarke*, 616 F.3d 834, 842 (8th Cir. 2010) (internal citations omitted).

[31]*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc*., 601 F. Supp. 2d 45, 50 (D.D.C. 2009).

### a.     Excessive Billing for Motion for Attorneys' Fees

Relators' counsel billed HP-exclusive time from March 31, 2005 to March 31, 2011.[32] Billing for work related to statutory attorneys' fees began around August 12, 2010, and continued through March 31, 2011.[33]  Of the 74-page detail of HP-exclusive time, 33 of those pages is billing for work primarily in connection with attorneys' fees -- research, exercising billing judgment, drafting documents, telephone calls, *etc*.  Most of the work was billed by a partner.

HP estimates that 21% of the fees counsel for Relators seeks is in connection with the fee petition.[34]  I believe that is a correct ball-park figure, and I find it excessive.

### b.     Billing for Collateral Dispute With Government

Mixed in with time billed for work related to attorneys' fees is time billed for work in connection with determining Relators' share of HP's settlement with the Government. Section 3730(d) does not explain who pays for a relators' legal expenses incurred in a collateral dispute between a relator and the Government over the relator's share.  The Sixth Circuit, under similar circumstances, found that because the defendant in a *qui tam* case had no right to participate in the negotiations between the relator and Government, the defendant should not be required to pay for costs in connection with determining the relators' share.[35]  This approach has

---

[32]Doc. No. 148, Ex. A

[33]Doc. No. 148, Ex. A-5.

[34]Doc. No. 198.

[35]*United States ex rel. Taxpayers Against Fraud v. GE*, 41 F.3d 1032, 1044-46 (6th Cir. 1994).

been adopted by district courts in the Eighth Circuit and elsewhere,[36] and I adopt it now.  HP will

not be required to pay for hours billed in Relators' collateral dispute with the Government over

Relators' share of the settlement proceeds.

### c.      Improper Entries

The last type of problem with billed HP-exclusive time is that certain entries are vague,

block billed, improperly billed, or do not seem to apply to HP.  Defendants' response sets out

multiple examples of these types of problems, and their point is well-taken.

Considering these three problems -- in particular the excessive amounts charged for work

in connection with attorneys fees and billing for Relators' collateral dispute with the

Government -- billed HP-exclusive time will be reduced by 15%.

| Name | GHP-Exclusive Hours Billed | Adjusted HP-Exclusive Hours (less 15%) |
|---|---|---|
| **Partners** | | |
| **Craig Johnson** | 68 | **58** |
| **Lon Packard** | **168** | **143** |
| **Ronald Packard** | **257** | **219** |
| **Von Packard** | **373** | **317** |
| **Dan Packard** | **203** | **173** |
| **Associates** | | |
| **Jacquetta Bardacos** | **308** | **262** |
| **Philip Favro** | **38** | **32** |
| **Christopher Fernandez** | **--** | **--** |

---

[36]See *United States ex rel. Thompson v. Walgreen Co.*, 621 F. Supp. 2d 710, 726-27 (D.C. Minn. 2009) and cases cited therein.

| | | |
|---|---|---|
| **Dan Fruchter** | **186** | **158** |
| **Gregory Hoole** | -- | -- |
| **Tessa Meyer-Santiago** | **91** | **77** |
| **Allison Packard** | -- | -- |
| **Support Staff** | | |
| **Scott Atkinson** | **26** | **22** |
| **Christopher Fernandez** | **11** | **10** |
| **Dan Fruchter** | **17** | **15** |
| **Cynthia Kelb** | -- | -- |
| **Sharon Western** | **125** | **106** |
| **IT Staff** | | |
| **Kenneth Barry** | **10** | **9** |
| **Ron Packard Jr.** | **81** | **69** |
| **Wilson Engstrom Corum & Coulter** | | |
| **Steve Engstrom** | **59** | **50** |
| **Shirley Jones** | **27** | **23** |
| **Law Clerk** | -- | -- |
| **Paralegal** | **9** | **8** |
| **Beck DeCorso** | -- | -- |
| | **Total** | **1,751** |

### B.      Reasonable Rates

Relators ask for attorneys' fees at rates ranging from $650.00 per hour for PPJ Partners to

$200.00 per hour for a PPJ Associate Attorney.[37]   The fees charged by local counsel range from

$225.00 per hour to $300.00 per hour.[38]   HP contends that the hourly rates are far in excess of

local rates.

Reasonable fees "are to be calculated according to the prevailing market rates in the

relevant community . . . ."[39]   The Eighth Circuit, in affirming the district court's award of

attorneys' fees calculated under the lodestar method, defined the local community as the "place

where the case was tried."[40] An Eighth Circuit court has interpreted this to include the venue in

---

[37]Doc. No. 148, Ex. A-2.  PPJ Partners Craig H. Johnson, Lon D. Packard, Ronald D. Packard, and Von G. Packard billed $650.00 per hour. PPJ Partner Dan W. Packard billed $550.00 per hour. Attorneys Jacquetta Bardacos and Philip Favro billed $500.00 per hour. Alison Packard billed $450 per hour. Tessa Meyer-Santiago billed $400.00 per hour.  Attorneys Dan Fruchter and Gregory Hoole billed $300.00 per hour, while Christopher Fernandes billed $200.00 per hour.

[38]*Id.*  Local counsel Steve Engstrom billed at $300 per hour, while Shirley Jones billed $225 per hour.  Both Mr. Engstrom and Ms. Jones are Partners in Wilson, Engstrom, Corum & Coulter in Little Rock.

[39]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The United States Supreme Court noted that in the traditional sense of supply and demand, "there is not such thing as a prevailing market rate for the service of lawyers in a particular community."  *Id.* at 896. Nevertheless, "the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate."  *Id.*

[40]*Farmers Coop. Co. v. Senske & Son Transfer Co*., 572 F.3d 492, 500 (8th Cir. 2009) (citing *Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982).  See also *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007) ("[t]o arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.").

which the case was filed.[41]  But out-of-town lawyers might not always be limited to local market

rates.  If "a plaintiff can show he has been unable through diligent, good faith efforts to retain

local counsel, attorney's fees . . . are not limited to the prevailing rate in the district where the

case is tried."[42]  In *Emery v. Hunt,*[43] the Eighth Circuit affirmed the award of local rates to

out-of-town lawyers where the district court found that the plaintiffs could have found qualified

local counsel if they had looked.[44]

Now to the issue of whether Relators used diligent, good faith efforts to retain local

counsel.  In his Affidavit, Von Packard wrote:

> I am familiar with some of the law firms based in Arkansas, and while we are
> confident that there are many highly skilled and impressive attorneys there, I am not
> aware of any Arkansas firm that has the reputation, experience, and expertise in
> serving as lead plaintiff's FCA counsel, coupled with the willingness to carry the
> massive costs and expenses necessary to handle major FCA litigation for multiple
> years.[45]

---

[41]*Keller v. Ga. Check Recovery, Inc*., No. 8:09CV92, 2009 U.S. Dist. Lexis 122990, at *8
(D. Neb. Oct. 13, 2009).

[42]*Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-41 (8th Cir. 1982) (citations
omitted).

[43]272 F.3d 1041 (8th Cir. 2001).

[44]*Id.*

[45]Doc. No. 148, Ex. A.

Similar statements appear in the affidavits of James Wagstaffe,[46] Michael Angelovich,[47] and Steve Engstrom.[48]

Relators first consulted PPJ in 2002, which resulted in PPJ being retained.  Then Relators devoted a good amount of time to deciding the venue in which to file their cases.  Von Packard states that part of the reason the cases were filed in Arkansas was because of the skills of local counsel, Mr. Engstrom and Ms. Jones.  And while Von Packard's affidavit (and the other affidavits mentioned above) provides that he was not aware of a local firm able and willing to serve as lead counsel, I am not convinced that chins the bar of diligent, good faith efforts to retain local lead counsel.  Nothing in the record indicates that local counsel -- beyond Mr. Engstrom and Ms. Jones -- was ever considered.

Under these circumstances, it seems to me that local rates apply.  In three Orders entered in March, 2011, in the Eastern District of Arkansas, the court found the following rates to be reasonable: lead counsel -- $275 per hour; junior partner -- $225 per hour; associate -- $175; senior paralegal -- $100; junior paralegal -- $75.[49]  I agree that those rates are reasonable for the

---

[46]Doc. No. 148, Ex. B-7.

[47]Doc. No. 148, Ex. B-8.

[48]Doc. No. 148, Ex. B-9.  Mr. Engstrom notes that the Nix Firm in Texarkana, Arkansas, possessed both the skill, expertise, and financial wherewithal necessary to act as lead plaintiff's counsel in a FCA case.

[49]*Hall v. David H. Arrington Oil & Gas, Inc.*, No. 2:09CV00091 BSM, 2011 U.S. Dist. Lexis 25666, at *6-7 (March 2, 2011) (Plaintiffs' attorneys: Charles Roscopf -- Roscopf & Foscopf, Helena, AR; John T. Holleman -- Holleman & Associates, P.A., Little Rock, AR.); *Smith v. David H. Arrington Oil & Gas, Inc.*, No. 2:09CV00101 BSM, 2011 U.S. Dist. Lexis 25007, at *7 (March 2, 2011) (Plaintiffs' attorneys: Charles Roscopf -- Roscopf & Foscopf, Helena, AR; John T. Holleman -- Holleman & Associates, P.A., Little Rock, AR.); and *Foster v. David H. Arrington Oil & Gas, Inc*., No. 2:09CV00147 BSM, 2011 U.S. Dist. Lexis 25090, at *4 (March 2, 2011) (Plaintiffs' attorneys: John T. Holleman, IV, and Maryna O. Jackson --

local market.  But considering the complexity of this case, I now turn to the *Johnson* factors[50] to determine if those fees are reasonable in this case. The *Johnson* factors are: (1) the time and labor involved;  (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained;   (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[51]

This was a complex case spanning years and thousands of billable hours.  The reputation of all counsel involved is top-notch and counsel are specialists in FCA cases. The settlement amount was large. Considering this, among other things, I conclude that the following rates in this case are reasonable with respect to out of state counsel: $375 per hour for all partners;[52] $275 per hour for senior associates; $200 per hour for associates; $100 per hour for paralegals

---

Holleman & Associates, P.A., Little Rock, AR.).

[50]See *Hensley v. Eckhart*, 46 U.S. 424 (1983) (citing the factors set out in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)).

[51]*Id*. at 430, n.3.

[52]PPJ Partners Craig Johnson, Ron Packard, Von Packard, and Lon Packard, among others lawyers from other firms, represented plaintiffs in a class action in the United States District Court for the Eastern District of New York.  In the Opinion on the motion for attorneys' fees, each of these PPJ Partners billed $550.00 per hour. Doc. No. 160, Ex. 16. The court noted that "the rates sought by counsel are high."  The court averaged all attorneys' billing rates and determined that $400.00 per hour was reasonable. *In re Wash. Mat. RESPA Fee Litig.*,  Nos. 02-CV-5944 (SMG), 04-CV-4322 (SMG) 2009, U.S. Dist. Lexis 21782, (E.D.N.Y. March 17, 2009).

and legal assistants; $150 per hour for the analyst; and $40 per hour for IT positions.  The local

counsel fees as requested are reasonable.[53]

Accordingly, fees will be awarded as follows:

| Name | General Hours (1/8th of Billed) | HP-Exclusive Hour (Less 15%) | Total Hours | Reasonable Rate | Total |
|---|---|---|---|---|---|
| **Partners** | | | | | |
| Craig Johnson | 145 | 58 | 203 | $375 | $ 76,125 |
| Lon Packard | 35 | 143 | 178 | $375 | $ 66,750 |
| Ronald Packard | 101 | 219 | 320 | $375 | $120,000 |
| Von Packard | 228 | 317 | 545 | $375 | $204,375 |
| Dan Packard | -- | 173 | 173 | $375 | $ 64,875 |
| | | | | Sub | **$532,125** |
| **Associates** | | | | | |
| Jacquetta Bardacos | 182 | 262 | 444 | $275 | $122,100 |
| Philip Favro | 132 | 32 | 164 | $275 | $ 45,100 |
| Christopher Fernandez | 7 | -- | 7 | $200 | $    1,400 |
| Dan Fruchter | 62 | 158 | 220 | $200 | $ 44,000 |
| Gregory Hoole | -- | -- | | -- | -- |
| Tessa Meyer-Santiago | 26 | 77 | 103 | $200 | $ 20,600 |
| Allison Packard | -- | -- | | -- | -- |
| | | | | Sub | **$233,320** |
| **Support Staff** | | | | | |

---

[53]Partner Steve Engstrom -- $300 per hour; Partner Shirley Jones -- $225 per hour; Law Clerk -- $75 per hour; Paralegal -- $75 per hour.

| | | | | | |
|---|---|---|---|---|---|
| Scott Atkinson | 30 | 22 | 52 | $150 | $   7,800 |
| Christopher Fernandez | 7 | 10 | 17 | $100 | $   1,700 |
| Dan Fruchter | 19 | 15 | 34 | $100 | $   3,400 |
| Cynthia Kelb | 19 | -- | 19 | $100 | $   1,900 |
| Sharon Western | 77 | 106 | 183 | $100 | $  18,300 |
| | | | | Sub | **$  33,100** |
| **IT Staff** | | | | | |
| Kenneth Barry | 1 | 9 | 10 | $40 | $      400 |
| Ron Packard Jr. | 197 | 69 | 266 | $40 | $  10,640 |
| | | | | Sub | **$  11,040** |
| **Wilson, Engstrom, Corum & Coulter** | | | | | |
| Steve Engstrom | 22 | 50 | 72 | $300 | $  21,600 |
| Shirley Jones | 18 | 23 | 41 | $225 | $   9,225 |
| Law Clerk | 1 | -- | 1 | $75 | $       75 |
| Paralegal | 2 | 8 | 10 | $75 | $      750 |
| | | | | Sub | **$  31,650** |
| **Beck DeCorso** | 54 | -- | 54 | $375 | **$  20,250** |
| | | | | | |
| | | | | **TOTAL** | **$ 861,485** |

## C.      Lodestar Enhancement or Reduction

Having reached the lodestar amount of $861,485, the next determination is whether that

amount should be adjusted up or down.  Courts give the degree of a plaintiff's success the most

weight in this analysis.[54]  A reduction in the lodestar amount is appropriate when a plaintiff has

---

[54]See *Hensley*, 461 U.S. at 437.

been only partially successful.[55]  It is in rare circumstances that a court increases the lodestar

amount.[56]

> Because the lodestar amount may already compensate the applicant for
> exceptionally good service and results, however, the fee applicant must do more than
> establish outstanding service and results.  The applicant also must establish that the
> quality of service rendered and the results obtained were superior to what one should
> reasonably expect in light of the hourly rates charged and the number of hours
> expended.[57]

In this case, certain Defendants were dismissed and certain Defendants were transferred

to another case.  The only Defendant against which Relators were successful was HP.  I do not,

however, find that this partial success warrants a reduction.  Relators were successful against

HP, and the degree of success against HP was high -- the case settled for a substantial amount.

Still, considering the complexity of the case along with the hourly rates and number of hours

worked, I conclude that no enhancement is necessary here to determine a reasonable fee.  The

reasonable fee is that stated above: $861,485.

### D. Costs

A relator in a successful case will receive "an amount for reasonable expenses which the

court finds to have been necessarily incurred, plus reasonable fees and costs."[58]  Relators seek

$217,793 in general costs and $51,631 in HP-exclusive costs for a total of $269,424.  Again,

Relators contend that the general costs could apply equally to the various defendants.  The costs

include items such as FedEx charges, IT-related charges, travel expenses, charges for copies, and

---

[55]*Id.* at 436-37.

[56]See *Perdue*, 130 S. Ct. at 1673-74.

[57]*In re Apex Oil Co.*, 960 F.2d 728, 732 (8th Cir. 1992) (citing *Blum*, 465 U.S. at 899).

[58]31 U.S.C. § 3730.

legal database research charges, among others.   Some of the charges seem excessive, and some charges seem to be for office-type expenses that are not properly the subject of a petition for costs.  Accordingly, I will reduce the total amount of costs sought by $2,500, for a new total of $215,293.  Again, as in connection with fees, the total amount of general costs will be divided by the number of cases filed -- eight.  The result, and the amount of general fees for which HP is responsible, is $26,911.   I find this amount compensates Relators for reasonable expenses that were necessarily incurred.

The HP-exclusive costs seem reasonable to me.  Expert fees make up more than half the amount of HP-exclusive costs requested.  The remainder of costs requested were in connection with travel, copies, and postage, among others.  I award Relators the full amount -- $51,631 -- of HP-exclusive costs they requested. The total amount of costs awarded is $78,542.

## CONCLUSION

The Relators' Motion (Doc. No. 140) is GRANTED.  Relators are awarded $861,485 in attorneys' fees and $78,542 in costs.

IT IS SO ORDERED this 5th day of October, 2011.


                                        /s/Billy Roy Wilson
                                        UNITED STATES DISTRICT JUDGE